Johnson J.
delivered the opinion of the Court.
The Court have bestowed on this case all the attention and consideration which its novelty and importance demanded and in the distribution of the labours of the Court, it has devolved on me to express the conclusion at which we have arrived. In discharging this duty I shall begin by considering first, of the motion in arrest of judgment.
The ground of this motion assumes that the counts in the indictment on which the prisoner has been convicted, are defective and void, and that judgment cannot be rendered upon them because they do not set out the conviction and execution of the slaves Kiah, George, Moses, and John, to whom the prisoner is indicted as accessary before the fact of the murder of the deceased David Sims.
*31 In the King v. Aylett, 1 T. R. 69, the rule is laid down by Mansfield C. J. that the indictment must charge every crime with such certainty and precision as to be understood by every one, alleging all the requisites which constitute the offence; and in the King v. Airey, 2 East. 35, Lawrence J. says that every indictment must contain all the circumstances necessary to the crime ; and those circumstances must be stated positively without periphrasis or intendment. Where all the facts charged may be true and yet the defendant may be innocent of the crime, the indictment is bad. Cowp. 682. Doug. 153. But it is sufficient if the indictment state with certainty all the facts and circumstances which constitute the crime, in its legal definition, without particularizing the incidents or evidence which go to prove the facts or circumstances. Starkie’s Crim. Pl. 63, 64. 1 Str. 139.
In due application of these rules to the casein hand, the inquiry necessarily arises as to the facts and circumstances which enter into the guilt of an accessary before the fact in the crime of murder.
Sergeant Hawkins defines an accessary before the fact, to be one who by hire, command, counsel or conspiracy, or by assenting to another’s committing a felony, abets and encourages him to commit it, and is so far absent when he actually commits it that he could not be encouraged by the hope of any immediate assistance from him. 2 Hawk. P. C. c. 29, sec. 16. and in this definition all the writers on the subject concur.
The fact then of the conviction of the principal does not enter into the definition of the crime of the accessary; it even constitutes no evidence of the guilt of the latter, and, according to the rule before laid down, need not be stated in the indictment against him.
The idea that it was necessary, has originated in the old common law rule that to avoid the inconsistency of the subsequent acquittal of the principal, the accessary could not be arraigned until the principal was attainted. 4 Bl. Com. 323; and hence it is concluded that that circumstance was necessary to the conviction of the accessary, and ought therefore to be stated in the indictment. But even according to the common law, that rule did not obtain in cases where it was impossible the principal could be tried, as in the case of his death: and the statute of 1 Ann. st. 2. c. 9. P. L. 92. provides that the accessary, either before, or *32 after the fact, may be put upon trial in all cases, where the princjpaj fejon slia.ll stand mute, or challenge peremptorily more than twenty jurors, or shall .be admitted to the benefit of clergy, pardoned, or otherwise delivered, before attainder. In all these cases then, the allegations that the principal was convicted and executed are not only unnecessary but would be inconsistent with the truth.
The crime of the accessary consists in his procuring and abetting the principal, which is consummated by the fact of the felony. The conviction and execution of the principal is evidence only of the guilt of the principal, and need not therefore be set out in the indictment.
I will now proceed to consider the grounds of the motion for a new trial in the order in which they are stated in the brief.
1st. The act of 1731, P. L. 124, directs that the names of the persons who have been duly summoned and shall appear to serve as petit jurors, shall be put into a distinct and separate box, or glass, and out of these, twelve persons shall be drawn by a child under the age of ten years, and that the persons so drawn shall serve on all trials at the term of the court at which they are so drawn, and it provides that in case any of the jurors so drawn shall be challenged and the challenge allowed, or shall absent themselves or neglect to attend, then the names of other persons shall he drawn out of the said box or glass to fill up and complete the said jury. The act of 1791, 1 Faust. 162, 3, provides for the organization of two juries in the manner prescribed, to serve as common plea and petit jurors, which are designated by the numbers 1 and 2: and in malting up a jury for the trial of a prisoner entitled to challenge, the uniform practice is to begin by calling the foreman of the jury No. 1, to be sworn, and then the others of that jury in the order in which they are drawn; if any are challenged, then to call the names of the jury No. 2, in the same order. If that is exhausted, then the names of the supernumerary jurors are to be drawn from the box or glass until the jury for the trial of the prisoner is completed.
The objection here is, that the names of the jurors were not called in the order in which they stood on the venire. It is enough to say of this objection, that it is opposed to the positive enactment of the legislature, expressed in terms not to be misconceived, and sanctioned by the practice and usage of the *33 Courts. Apart from these considerations, it is difficult to conceive of a system, when taken altogether, better calculated to further the ends of justice, and to secure the trial by jury from fraud and corruption. At the term preceding the trial, forty-eight jurors are drawn by lot from the body of the district; out of them again, a jury is drawn by lot, and then the prisoner has the right to challenge twenty peremptorily, and indefinitely for cause. If then the Court either felt the inclination, or were satisfied of the power, there is no reason to substitute in its place the mode proposed in behalf of the prisoner, for it has, at least, the advantage over that in subjecting a second time to lot, the order in which the jurors shall be called, and is.so far a protection against packing a jury.
Something was said at the bar about the manner of completing the jury after the two standing juries were exhausted, but neither the report nor the grounds of the motion state what rule was observed, nor do the counsel state it certainly. It will be presumed, therefore, to have been done conformably to the act.
2d. The question whether the prisoner had or had not the right to examine the juries on their voire dire, to ascertain whether they had formed and expressed opinions as to his guilt, was very fully considered in Baldwin’s case, 1 Treadw. 289; and I have no inclination to enter a field which has been already so ably contested on both sides. There is certainly much force of reasoning on the part of the minority of the Court, but the judgment of the majority disallowing the right, has, as far as I know, been generally acted upon and acquiesced in ; nor have I been able to perceive that the dangers apprehended from it have been realized in practice. The manner of drawing and impannelling a jury for the trial of a prisoner, his right to peremptory challenges, the means he himself must necessarily have of knowing whether there exists any cause of undue prejudice, the facilities of discovering it before and after the trial through the agency of friends, and the necessity that every individual of the jury must concur in a verdict of guilty, furnish, I think, a very adequate security against his being put upon his trial before a jury that had prejudged his guilt. The right to interrogate the jurors in this case was therefore properly refused.
*34 3d. The third .ground objects that the record of conviction of the slaves Kiah, George, Moses, and John, was improperly ad» mitted in evidence against the prisoner.
As between free, white persons the authorities all agree that the record of conviction of the principal is evidence against the accessaiy. 1. Ph. Ev. 249. Foster C. L. 364, 5. That position is not controverted here ; but it is concluded that it is incompetent, because the persons charged to be principals were slaves, and were tried before a tribunal having no jurisdiction over the prisoner, and therefore incompetent to furnish evidence against him ; and also, because the evidence of slaves, and that without oath, is under the act regulating the trial of slaves and other persons of colour admissible in that jurisdiction.
It will be perceived then, that this objection raises directly the question whether a free, white person can be ah accessary to a felony committed by a slave; for if neither the record of conviction of' the slave, nor the evidence admissible on his trial can be admitted, then the prosecution of a free, white accessary would be idle mockery.
It is some relief that this important question has passed under the notice of the late Mr. Justice Nott, in the case of the State v. Wright, 4 M’C. 362, in which he comes to the conclusion that it must be admitted from necessity as well as upon principle.
Mr. Justice Foster, in his discourse on the subject of accomplices, Foster, C. L. 361, remarks, that notwithstanding the connection between principals and accessaries, yet in consideration of law they are quite different ; and again, p. 365. he says that when the accessaiy is brought to his trial, after the conviction of his principal, it is not necessary to enter into the details of the evidence on which it was founded ; the conviction itself is sufficient to put the principal upon his defence; for it is founded on the legal presumption that every thing in the former proceeding was rightly and properly transacted. The evidence of the guilt of the principal is not, (as remarked by Judge Nott, in the case before referred to,) received as evidence of the guilt of the accessary, but of a matter collateral to it, and if admissible as to the parties to it, it is necessarily so as to all -affected by it.
4th. It seems to have been thought formerly, that the record of the conviction of the principal was conclusive evidence of his *35 guilt on the trial of the accessary; but this opinion is most satis» factorily combated by Foster, C. L. 365. and it is now well understood that it is only prima facie evidence and may be rebutted on the trial of the accessary by shewing that he was not guilty, or that the offence was not committed. If then the prisoner may m his defence resort to parol evidence to shew the innocence of his principals, it follows necessarily that it may be offered on the part of the prosecution to shew their guilt. The very circumstance before relied on, that the trial of the principals was in a jurisdiction, where neither the forms of the common law are used, nor the rules for the admission of evidence observed, seems to justify, if not to shew the necessity, of sustaining the record by other evidence, and what can be higher or better evidence than the free and voluntary confession of a party charged with a crime, although he be a slave.
In this ground also is included the further objection, that the declarations of the slaves of the guilt of each other, were admitted in eVidencc. That objection does not appear from the report to have been made in the court below, and that would be a sufficient answer to it now. In addition to that, it appears to have no foundation in point of fact. The declarations of each appear to have been admitted only so far as they were necessary to shew his own guilt. Takefor illustration, the case of John, who was armed with a knife and stationed at the door to keep persons from coming in. In this, and this only, he acted alone, and if his declarations are no further admissible, his guilt would not follow. His combination with the others and the fact of the murder, were all necessary to his conviction, and of these he was as competent to speak, as those affecting himself alone. It was impossible he could make out his own guilt without speaking of the acts of the others, and as I understand the evidence, their declarations were admitted no further.
5th. The fifth and last ground denies that the evidence was sufficient in law to authorize the verdict of guilty.
The Court has always exercised the power of awarding new trials where verdicts are manifestly against the evidence, or where it preponderates so strongly as to strike the mind at once as a conclusion contrary to the truth, or as originating in a popular prejudice against which the best ordered communities are not always secure; and in a base affecting the life of an unfortunate *36 prisoner, the obligation to order a new trial under such circumstances, would be imperative. But when the scale is turned against the prisoner, or circumstances inconsistent with his innocence appear and are unexplained, it would be usurpation on the part of the Court to control the judgment of a jury in a matter awarded to them exclusively by the usages, constitution, and laws of the country: nor do I, in all my experience, recollect any case in which a new trial has been granted upon this ground where, as here, the presiding Judge concurred with the jury.
Among the Romans the unnatural crime of parricide was thought so improbable that no law was provided for its punishment, and notwithstanding the sad reality proves how unworthy we are of the compliment to our nature, lean scarcely now persuade myself that there exists a being in the form of man and endowed with his faculties, who possesses a heart so depraved, and affections so perverted, as to prepare him, of settled purpose, to raise his hand against the life of a parent. Under the influence of these feelings I have reviewed again and again the evidence so fully and minutely detailed in the report of the presiding Judge, with a deep solicitude to discover facts and circumstances which would justify the Court, consistently with the rule before laid down, in awarding a new trial. They do not, it is true, furnish direct and positive evidence of the guilt of the prisoner : but there is scarcely a paragraph which does not contain some fact or circumstance inconsistent with his innocence, and which is unexplained; and although when considered separately, it would be difficult to fix on any one, as containing in itself, sufficient evidence of his guilt; yet, when taken collectively, and considered in their relations and connections, if they do not force conviction, they form a combination leading to the conclusion of guilt; and constitute what some of the law writers esteem more convincing than positive proof, inducing a ready acquiescence in the conclusion to which the jury and the Judge have with better means arrived. I have only to remark in the conclusion, that with the best attention I have been able to bestow on the case, aided by the learning and experience of my brethren, I have been unable to discover in the law or the facts of the case, any thing which would justify the Court in arresting the judgment or granting a new trial. Both these motions must therefore be dismissed, and it is so ordered.
Motion refused.